We'll hear argument today in Case 2296, Financial Oversight and Management Board for Puerto Rico v. Centro de Periodismo Investigativo. Counsel? Mr. Chief Justice, and may it please the Court, in 2016, Congress established the Oversight Board and assigned it the critical task of leading Puerto Rico back to fiscal health. Congress enacted a number of protections for the Board. One of them is Section 2126A of PROMESA, which gives the federal courts exclusive jurisdiction over any and all suits against the Board. But the First Circuit below held that 2126A abrogated the Board's immunity. In fact, that it did so for every type of suit, federal and territorial. That decision was wrong and should be reversed. In order to abrogate, a statute must be clear and unmistakable on its face. There is nothing in Section 2126A that even comes close. This Court has held many times that jurisdictional provisions do not abrogate because the power to hear a case says nothing about the availability of a defense. And mere textual inferences do not qualify. Separately, CPI has raised the issue whether Puerto Rico, and therefore the Board, is entitled to sovereign immunity. The Board believes the Court need not reach that issue. But if it does, the Court has repeatedly held for more than 100 years that Puerto Rico has immunity. It held that way before Puerto Rico's Constitutional Assembly in the 1950s. And since then, it has said that Puerto Rico has a degree of sovereignty, excuse me, autonomy comparable to a state. CPI's theory that Puerto Rico has immunity only in its own courts would mean that Puerto Rico or its governor or other officials could be sued under Puerto Rico's own law in federal court. That would be a sea change for Puerto Rico and an extremely harmful one. I welcome the Court's questions. What would be the difference if Puerto Rico were a state in your argument? I think as far as this argument would be concerned, there would not be a difference. How would the Congress be able to adopt or enact PROMISA and apply it to a state in this manner? There may be a difference in the source of authority that Congress would rely on. It wouldn't be Article IV, of course. But the Congress has the power to abrogate in appropriate circumstances as long as it has that power. And the same rule would apply of clear and unmistakable statement of intent to abrogate. Just one final question. I know your preference is to assume immunity, but since I prefer not to assume immunity, would you tease out a bit your basis for a territory having sovereign immunity? And with federal courts, for example, a superior court, or is it a territorial court or one of the local courts? Sure. So our position is that the sovereign immunity of a territory is part of a large body, a large doctrine of constitutional common law or common law sovereign immunity. It goes by different names. The idea behind it is once Congress gives certain attributes of sovereignty through an organic act, for example, to a territory, then the common law basically dictates that as a result of the sovereignty that it has at that point, it's entitled to immunity both in its own courts and in federal court. There are two different strands, though, which I want to emphasize, both of which are associated with sovereign immunity, but they're important. The rationales are slightly different. One of them is the principle that a sovereign cannot be hailed into a court without consenting to being held that way. That principle would mean that Puerto Rico could not be sued against without his consent in federal court. But there's a second strand, which I think is even more powerful here, which is that a sovereign as a lawmaker, part of the sovereignty or the aspect of being a lawmaker is the power and the autonomy to decide who the law applies to. If Puerto Rico passes a territorial law, Puerto Rico is able to decide that that law should not apply to it. On CPI's theory, if that sovereignty only applies in territorial court, what that would mean would be, as could happen here, Puerto Rico could pass a law and in federal court, Puerto Rico's sovereignty and autonomy to hold it responsible that way. MR. BOUTROUS. You analogize in your argument to the sovereign immunity of states, the sovereign immunity of tribes. And I wonder if Puerto Rico's situation, though, is significantly different, both with respect to states and with respect to tribes. They had sovereignty at the time of the convention, and that carried forward, just as the states carried forward, just as the tribes carried forward. Puerto Rico, obviously, at some point, at points in the past, had the sovereignty of Spain. But that did not carry over in any sense. So the question would be not to the extent to which the Constitution recognized the existing sovereignty. The question would be, did the Constitution in any way confer sovereignty, create sovereignty with respect to Puerto Rico? And as far as the plan of the convention goes, the plan of the convention was to cover the territories with plenary authority on Congress's part, not with any notion of sovereignty. MR. ZUNIGA. So our position is that the sovereignty should not depend on history. That position was adopted by the court that history matters in the Sanchez Valle case, really only for the purpose of a double jeopardy analysis. And I think the court went out of its way in Sanchez Valle to say, this is not the standard rule. In fact, I think the court said the ordinary meaning of sovereignty is not like what happened there. MR. SCHNEIDER. All right, I'll give you that. MR. ZUNIGA. Okay. The question of whether or not there is sovereign immunity, again, I think there's two steps that are involved. One of them is that Congress has to confer attributes of sovereign immunity. And the other one is that the Constitutional Assembly in the 1950s, which, as this Court has said many times, really made Puerto Rico unique and gave it- MR. SCHNEIDER. Well, that's right. That's sort of my point, unique. And so I'm just wondering how far you can stretch the analogy to state sovereign immunity, to tribal sovereign immunity. MR. ZUNIGA. Again, if it's unique, we would take the position that it's unique, you know, in favor of sovereignty because of- MR. SCHNEIDER. Right. But isn't it your first position that we should not really get into this? I mean, I didn't see it in the briefs. I'm a little concerned about relying on our own sort of views of it based on other things when it hasn't really been briefed. So could you talk a little bit about your assumption position and whether and to what extent we can assume for the purpose of answering the question that we actually decided to take in this case? MR. ZUNIGA. Yes, Justice Jackson. We agree that the Court does not need to reach this issue. The question presented only addressed the issue of whether Section 2126a abrogates. The issue of sovereign immunity was not raised by us. MR. SCHNEIDER. But what do you say about the S.G.'s position that we should go ahead and assume? MR. ZUNIGA. Our position is that the Court has, in appropriate circumstances, assumed that a predicate issue like sovereign immunity exists. And the Court should do that here because as CPI, I think, acknowledged in their opposition to certiorari, this really wasn't- none of these arguments were made below. The two-tiered theory of sovereign immunity, which CPI is pressing now, that was not raised below. The First Circuit was simply following its own precedents, really with no analysis. I agree that this Court, as it's said many times, is a court of review and not first view, and therefore the Court doesn't need to reach that  JUSTICE SOTOMAYOR. Counsel, if we reach this issue, it has tremendous implications outside of PROMESA, doesn't it? MR. ZUNIGA. Yes, Justice Sotomayor. JUSTICE SOTOMAYOR. Now, let's go back to the foundational question by Justice Thomas and and others didn't have their own sovereignty before they became territories of the United States, correct? They had sovereignty of France or of other countries, correct? MR. ZUNIGA. In most cases, yes. JUSTICE SOTOMAYOR. And historically, no territory was dragged into federal or state or territorial courts unless their sovereignty had been waived, correct? MR. ZUNIGA. Yes. JUSTICE SOTOMAYOR. So in 200 years of our history, the Holmes, Justice Holmes' propositions that no sovereign, which I think we have given to mean no governing entity, would be dragged into a court without the consent of the sovereign, correct? MR. ZUNIGA. Yes. JUSTICE SOTOMAYOR. And so to the extent that the United States has not permitted, entertained, looked at suits against these territories, they've acted akin to states, correct? MR. ZUNIGA. Yes. JUSTICE SOTOMAYOR. That's what we said in a long line of cases in Rosalie, in Imanolin. We said that Puerto Rico is like a state, correct? MR. ZUNIGA. Correct. JUSTICE SOTOMAYOR. All right. Having taken those propositions as a given, assuming we have sovereignty, the government, not the government, but your adversary says, okay, it acts like a state now through the 1952-54 Act, but that means it only has sovereignty in its territorial courts. It doesn't have sovereignty in federal court. Address that subset of the argument. MR. ZUNIGA. Justice Sotomayor, it's our position that this two-tiered theory of sovereign immunity, that Puerto Rico only has sovereignty, has immunity in its own courts, that there's no precedent for that and that, in fact, it would be very counterintuitive or would lead to very counterintuitive results. There is no authority of a situation we were able to find where a court has ever said that a sovereign only has, or this court has ever said that a sovereign only has immunity in its own courts. And it would lead to a lot of— JUSTICE SOTOMAYOR. And, in fact, that's what Holmes was talking about, that the general proposition was broader, that you can't be held into a court. MR. ZUNIGA. Yes, exactly. And the second point is it would lead to some very strange results. One of the results would be that the territory, let's just say citizens of the territory who tried to sue the territory in its own courts would not be able to because, by hypothesis, it doesn't have immunity—it does have immunity in that situation. But then noncitizens taking advantage of diversity jurisdiction could sue under the exact same law in federal court against the sovereign. It really doesn't make sense. JUSTICE KENNEDY. Does the 11th Amendment say states or things like states? MR. ZUNIGA. The 11th Amendment says states. JUSTICE SOTOMAYOR. So what do you do with that? Meaning the government itself is saying it's not 11th Amendment immunity, which is what the First Circuit has relied on, but it's common law foreign sovereignty. Isn't that a reason to remand and let them look at this issue more closely? MR. ZUNIGA. No, I don't think there's a need to remand here. I think, first of all, the 11th Amendment analysis— I mean, answer your question, answer the question presented, but that issue could be addressed more fully below, correct? MR. ZUNIGA. Yes, it could. In fact, this Court has actually left open the question of whether the 11th Amendment applies to Puerto Rico. We're not relying on that argument here because we don't need to, but the Court left it open in the Puerto Rico aqueduct case in a footnote. JUSTICE SOTOMAYOR. Do you understand the Court of Appeals to be relying on that argument? MR. ZUNIGA. The Court of Appeals, through a series of its own holdings, I think the original holding when Justice Breyer was on the Court was that 11th Amendment principles apply. I think after that time, the Court said that the 11th Amendment itself applies. That's a longstanding precedent in the First Circuit. It's been applied. Again, we're not relying on that argument because we don't think that we need it here, and it's an open question here. We think the common law, sovereign immunity, which is the same principle that the tribes rely on, is enough to give territories in general in Puerto Rico and specific sovereign immunity here. JUSTICE SOTOMAYOR. By the way, the tribes are just like Puerto Rico in that Congress controls their dependent sovereign nations, and Congress can waive their immunity as well, correct? MR. ZUNIGA. Absolutely. Congress can. JUSTICE SOTOMAYOR. And we have said that tribes can't be sued in federal court, correct? MR. ZUNIGA. That's correct. The plenary power of Congress, as far as the tribes are concerned, is exactly the same as it is with regard to a territory. So it can't prove because of that that there's no sovereign immunity because the same would be true in the tribes' case, and the Court has held otherwise. KAGAN. May I take you back, Mr. Harris, to Justice Jackson's questions about assumption? And you rightly point out we assume questions all the time on a way to a holding, but usually we assume a question and then we say, well, we're going to assume this because anyway you lose on a different ground. You want us to do something different. You want us to assume the immunity question only to say, well, you win with respect to abrogation. And that's a funny kind of posture, you know, because the assumption will essentially determine the disposition of the case. You're going to get immunity but only because we've assumed that you should get immunity. And I wonder if you have any precedent for that, any cases in which we've done something similar, any authority to suggest it's appropriate. I don't know of any authority to say it's inappropriate. It just seems quite weird to me. HARRIS. We were not able to find a case where it seemed that the existence of immunity would have mattered to the outcome where the court just assumed it. Nevertheless, as you mentioned, Justice Kagan, the cases don't seem to give that as the reason for why it's okay to assume. Several of the cases we cited, I think the Feeney case, just said we're going to assume it. It happened to be in that case because there was consent to jurisdiction that it didn't have an impact on the outcome, but the court didn't say that was the reason. Can you address the larger question implicated by Justice Kagan, which is sovereign immunity is at least an affirmative defense that would normally be the burden would be on the person asserting it to establish. Does that make it a particularly odd circumstance to assume its existence? I don't know if that changes things. I think there have been situations where a party may bear the particular question and the court nevertheless assumes it. Again, I agree that there doesn't seem to be a case where the court has done that specifically with regard to sovereign immunity, but I think the principle stands. The other reason I'd mention as well why it may be appropriate to assume it here is that other parties who you would think would be most interested in the answer to that question, for example, Puerto Rico authorities themselves are not present in this case. It would make sense to at least let them weigh in perhaps in another case on that question. There is an alternative ground that immunity could be found to have been waived besides the PROMESA Act, and it would be that the Puerto Rican Constitution and laws waive sovereign immunity from suits like this one. I know you say they don't, but assuming that argument has not been addressed, correct? That argument, correct. That argument was never raised below. It was never addressed by the court below. It's simply not in the case. Well, it is now because it came up before us. It's been raised by a respondent now. Yes, it has. And it could be raised below, correct? It could be raised in another case, yes, it could. Thank you, counsel. Justice Thomas. Justice Alito. Anything further? Justice Sotomayor. Just one question to follow up on Justice Sotomayor's. We have received a lot of briefing about Puerto Rico's Constitution promoting open records. I understand your procedural objections to addressing in this case. Do you want to say anything about the substance of the argument? The substance of? The merits of the argument, whether the Puerto Rico Constitution favors disclosure of cases like this. The only thing I would say about on the waiver argument that I think is significant is that it's not clear whether or not waiver would even apply in federal court in the first place. In other words, the fact that Puerto Rico has agreed or has consented to suits against governmental entities in its own courts, it does not follow that it's done so in federal court. And in fact, the statute which implements that constitutional right, a statute called TEPRA, which is a Puerto Rico statute which gives a right to go obtain government records and go to court if you don't get them, it's clearly written on the assumption that you can only go to territorial court. The section that says judicial review says in the court of first instance. Thank you. Ms. Kavanaugh, Mr. Smear, Justice Jackson. Thank you, counsel. Ms. Brown. Thank you, Mr. Chief Justice, and may it please the court. For more than a century, this court has recognized that Puerto Rico is immune from being sued without its consent. That immunity derives from the nature of Puerto Rico's government and it extends to the sovereign's own court and to federal court. Just as with federal, state, and tribal immunity, any waiver or abrogation of Puerto Rico's sovereign immunity requires a clear statement. Section 106A of PROMESA does not include that statement. It simply channels jurisdiction to when the board's immunity is elsewhere abrogated or waived. The only other provisions of PROMESA that Respondent relies on likewise apply in that context, most relevantly in Title III proceedings when bankruptcy code abrogates immunity. But nothing in those provisions indicates that Congress intended to make the board susceptible to suit for any and all claims under federal and territorial law. Because the board's immunity is also subject to waiver by the Commonwealth, so long as that waiver doesn't conflict with PROMESA, the court should remand to allow the courts to address that issue. I welcome the court's questions. You take a different position with respect to assuming sovereign immunity in your brief. So, could you comment on the argument that we could possibly or we should assume sovereign immunity? So, our position is kind of consistent with what Justice Kagan was referencing earlier. Usually, when this court has assumed without deciding a question, it's because it doesn't have an effect on the end outcome. So, I think it would be a little bit strange to assume that here if you take the view that we think is the correct view, the correct reading of the statute, which is that it clearly does not abrogate that immunity. And so, I think it would be a little bit strange to not address the existence of the immunity in the first place. We also think it's not necessary to try and avoid that question here when this court's precedents dating back for a Puerto Rico is entitled to that immunity. And so, we think it's appropriate to address that question in the first instance. Do you have a case in which a territory has been granted or been said to have had sovereign immunity in another sovereign's courts? So, I think that the closest case that we have on that score is the Emanuel case. And of course, the court ended up that the territory had waived its immunity. And so, it didn't really, it wasn't necessary to the outcome of that case. But the court certainly went into the discussion of sovereign immunity in that case. And it seems that the implication of that is that it applies equally in territorial court and in federal court. Have you ever heard of a case in which we're deciding the sovereignty of an entity where that entity is not before us? No, I have not. But it is just kind of the nature of this case. This was set out in, I think, the cert papers. So, I think the court was aware when it granted that this was an issue that the respondent intended to take issue on. And when we granted, I understood that there was at least some question about whether or not we should also consider the sovereignty point. And we didn't grant cert on that issue. So, it seemed as though the court was isolating abrogation. If the court chooses to consider only that issue and decide it on that basis, I think, I don't have a precedent for you that says that it's impossible to do that. So, there's no legal impediment that you can... Not that I'm aware of. Again, I just think that it is kind of a strange thing to do in a case where if it does end up mattering to the outcome, it starts to look a little bit more like an advisory opinion. But wait, why does it matter? I mean, it's not intertwined. I could totally understand the concern about assumption if the only way that we could possibly answer the abrogation question, it would be based on particular findings that we made relative to sovereign immunity. And then, you're sort of like, how did you even reach that answer because these two things are so intertwined? I understood it to be antecedent, the it being the sovereign immunity question, but independent in the sense that it doesn't rely on the same factors at all. So, I think that's generally correct. The abrogation could be affected, I think, in some ways by the fact, the existence or not of immunity here. So, to the extent that you are kind of looking at the statutory language and think that some provisions only have meaning to the extent that there is a waiver of sovereign immunity under territorial law for certain provisions, that it could end up affecting the way that the court views the statute there. So, I think it does... Do you think that there's any difference in the kind of clear statement rule you could come up with, depending on what the basis for the immunity was? Or, this is going to the question of whether it's intertwined or not. You know, depending on what the basis for sovereign immunity is in this case, could it possibly lead to a different clear statement rule? So, I think that the same clear statement rule has been applied in every context involving sovereign immunity. I think it is just kind of this necessary corollary to the existence of self-government in the first instance. That's the way that the court has described it in Bay Mills, for example. The court said once, you know, when we have self-government that exists, we are particularly hesitant to conclude that Congress is acting to undermine that self-government. So, I think that same analysis applies here. Of course, the tribes are under the plenary authority of Congress in the same way that the territories are. So, I think that the analysis would likely be the same, regardless. Counsel, have you considered how your sovereign immunity argument might apply to other territories besides Puerto Rico and what their views may be? So, I think that all of the territories likely have the same kind of baseline level of self-governance that the court recognized in Rosalie is sufficient and necessarily leads to sovereign immunity. There have been some courts, there's a Ninth Circuit opinion, I believe, that holds that with respect to the Northern Mariana Islands, there are provisions within the compact with Congress or the covenant with Congress in that case that waive sovereign immunity in particular instances. So, there might be some differences with respect to the terms of their sovereign immunity, but the baseline existence, I think, is the same. So, ruling for you in this case would effectively decide not just Puerto Rico, but other territories who aren't before us as well? That's likely the case, I think, based on their self-government. If we reach the sovereign immunity. Yes, exactly. Counsel, I'm sorry. Go ahead. We have had cases involving jurisdiction where we've addressed whether one jurisdictional ground is present or not and remanded to see when we said, no, but there could be others, correct? Or yes, or there could be other. Yes, I believe that's the case. I had the same question that Justice Gorsuch had, and part of your answer was, you think all of the territories have the same level of self-government. Is that true? They have the same, the sufficient baseline level. I think that Puerto Rico kind of stands apart from them in having additional sovereignty, additional self-governance separate and apart from that, but their immunity was decided back in 1913 when only the four acre act was implemented at that point. And I think that all of the territories have at least that baseline level, which is the level that has given rise to sovereign immunity. And that was the level the court looked at in Rosalie, correct? That's correct, yes. And said that these islands were like sovereigns in the sense of not being held into a court. Yes. And then in Emanuel, we said it was federal court as well, correct? Emanuel was, yes, the following year, which applied the same kind of reasoning to a federal court. Well, but I mean, Rosalie itself was simply the courts of Puerto Rico, right? That was the court that was at issue in Rosalie, yes. And you would define that baseline level of sovereignty that you think gives rise to immunity as what? So the court in Rosalie and then in Shelco has kind of just described it as this self-governance and autonomy over all matters of local concern. The courts there compared the government or the legislative power that was granted to the territories to those that were granted to organized and incorporated territories and found them to be essentially identical. So I think it's just this general, you are governing yourselves under all issues of local concern. Justice Thomas, Justice Lee, anything further? Justice Kavanaugh? On the remand point that you make, the other side says there's no need for that remand because that issue was never raised previously in the lower courts. So can you respond to that? So I think that there was, we haven't taken a position on whether that issue is forfeited or not. I think that on remand, the court could decide that as well. There were certainly, I think, references in the briefing to the fact that this was a constitutional right that was generally available in the territories themselves. And so perhaps that would be sufficient to raise it. But we don't think it would be appropriate or necessary for the court to actually reach out and decide the full extent of Commonwealth law here. We think that there are some questions as to whether those laws or the right to access to these documents is generally brought in actions against the government itself or just against territorial officers under something like an ex parte young suit. I think there's an amicus brief from Espacio Abiertos that kind of discusses the general writ of mandamus there and notes that that is generally applied to officers and not the territory itself. Thank you. Justice Barrett? Justice Jackson? Thank you, counsel. Ms. Harris? Mr. Chief Justice, and may it please the Court, Congress did not need to surmount a clear statement rule to subject the Board to suit for violating Puerto Rico's Constitution. This Court has required some historical or constitutional basis for clear statement rules. Puerto Rico is a territory, so the clear statement rule for abrogating state sovereign immunity is out. But unlike for states and tribes, this Court has never imposed clear autonomy, nor has this Court ever imposed clear statement rules for waivers or abrogations of territorial immunity. Clear statement rules would conflict with Congress's plenary powers over territories, and adopting the other side's one-size-fits-all theory of immunity would be a drastic and unnecessary way to protect Puerto Rico, which will not be flooded with federal suits no matter what. The Federal Relations Act already gives Puerto Rico the benefits of state federal laws, and there is no diversity jurisdiction for suits against territories. Regardless, the Board is not immune because Pramesa's text clearly says the Board will be a defendant in all kinds of actions, especially constitutional ones. 2126A creates a reticulated federal review scheme for any action against the Board. Congress created a forum for the Board, including for constitutional violations will take effect. Federal courts couldn't issue orders against the Board or immune, and constitutional violations under 2126C cover Puerto Rico's constitution. Pramesa shunts all federal and territorial claims against the Board to federal court. But by doing so, Congress didn't suspend Puerto Rico's constitution or its waiver of immunity. The unelected Board is not the one part of Puerto Rico's government entitled to an immunity that the people of Puerto Rico withdrew from everyone else. I welcome the Court's questions. Ms. Harris, could you comment on the argument that we've heard or suggestion that we can bypass sovereign immunity and simply decide abrogation? I don't think that is plausible here because in order to rule against this, at least, the Court would have to say there is some sort of clear statement that applies to the abrogation analysis and then apply it to Pramesa. So that just begs the question, where does that clear statement rule come from? And is there some underlying immunity that is protected? As Justice Gorsuch noted, it's all the more strange to assume all that because sovereign immunity is an affirmative defense. But again, the opinion would have to read something like, there is a clear statement rule based on what? I mean, state sovereign immunity cases, that's what the Board relied on in its briefing in the First Circuit and below, and also in its opening brief in this Court. I don't understand why you lead with a clear statement rule. I thought we could just, that assumes that there are circumstances in which you could have sovereignty without a clear statement rule. So why doesn't the sort of question, rather than clear statement, the initial question is, does Puerto Rico, are they entitled to the status of a sovereign? We assume that because the First Circuit was relying on its own precedent with respect to it. The Court's cases have suggested it. And in any event, every time there is a recognition of sovereign immunity, a clear statement rule follows. Why wouldn't the opinion read like that? So that bakes in a lot of assumptions with respect to the idea that clear statement rules are sort of like a buy one, get one free if you are sufficiently sovereign to have some form of immunity that I think are refuted by this Court's own cases about territories. So you have cases that, no, no, not about territories. Do you have a case that suggests that if we find that sovereign immunity applies, there's another set of analyses to determine whether a clear statement follows? So yes, I would say Jinx is a good example, at least with respect to counties, which are immune in state court. And this Court said, you don't need a clear statement rule to abrogate the immunity that counties have. It's a common law immunity. And while this Court's cases don't sort of squarely say, I think the problem is the Court's cases don't sort of squarely ever say that there is just a universal, unified theory of sovereign immunity. I don't understand. I don't understand. Is it or is it not the case that every time we found sovereign immunity, we say a clear statement rule follows? It is not the case. And one case I would point to is actually Rosalie itself, because I think everyone agrees there that the Court is saying there is absolutely and certainly sovereign immunity for Puerto Rico in its own courts. But that case also involves a question of waiver, which is whether the Foraker Act waived Puerto Rico's immunity in its own courts, and even if you assume there's some immunity elsewhere, whether it was waived. The Court did not apply a clear statement rule in that case and instead looked at just ordinary principles of statutory interpretation. What actually the case came down to was the Court's conclusion that the design of the Foraker Act and its grant of co-equal, three co-equal branches to Puerto Rico would be inconsistent with reading in a waiver. And I think that underscores all the more, Rosalie was focused on the idea that if you are the Puerto Rico legislature or another political branch and constantly hail it before the courts of Puerto Rico, that would be inconsistent with the government that Congress was trying to set up. Emanuel. Ms. Harris? Go ahead. No, no, go ahead. I just wanted to explore the suggestion by Petitioners that we should avoid this issue altogether and assume the existence of sovereign immunity for purposes of this case. And some of the arguments I think that are strong for that are that we don't have Puerto Rico before us. We have this board that may expire and was a creation of Congress. We don't have the other territories before us as well. And it's a rather large and important constitutional question that really may only be relevant in a small number of cases, too, given that by statute Congress has effectively given Puerto Rico sovereign immunity for purposes, you point out, of general purpose federal statutes. And then we have in your opposition to cert, your client stated that the First Circuit correctly framed the inquiry as whether Congress used, quote, unmistakably clear language to abrogate sovereign immunity in this case. Why aren't all those just good reasons to defer this question for another day if it ever becomes relevant again, given, again, Congress's statute saying that Puerto Rico generally has sovereign immunity? So, first of all, it would be a little bit ironic for the board to say it is entitled to share in Puerto Rico's sovereign immunity because it's part of that government and then just say... Ironies aside, is there any legal impediment to proceeding that way? Yes, I think the other legal impediment, just to go on the cert papers, is we weren't conceding that a clear statement rule applies. What we're saying is in a universe where you're asking did the First Circuit misapply that standard, it doesn't apply. And the other impediment would be that, again, the opinion... I'm not sure I understand that as an impediment. Can you explain how that's an impediment? So it's not a concession. The impediment would be just in the way that the opinion would have to be framed. So you say it's not a concession. Fine. I will spot you without granting that. Okay. Okay. I'm looking for a legal impediment to proceeding as petitioners suggest. Yes. And the legal impediment would be that you would have to be writing an opinion that says we're assuming there's a clear statement rule. And to hold that there is a clear statement rule is to be essentially saying, yes, there is some sort of basis in the court's cases historically or as a constitutional matter that it should actually apply to Puerto Rico and the other territories at all. If you're concerned about that sort of inquiry, I mean, it seems like maybe one of the better ideas would be to consider whether this case either should be resolved at all or also to look at many of the alternative off-ramps in this case, including the waiver question with respect to Puerto Rico Constitution's structural waiver of immunity in the circumstances. You could also say that PROMESA itself is clear enough in terms of its terms in being an entirely reticulated and specific judicial review scheme for the board itself that only has meaning if the remedies for constitutional violations are, in fact, what we say. That just goes back to the ultimate question of what do we mean by clear rule when you're waiving sovereign immunity. You're analogizing Puerto Rico to a municipality, but it's not. You yourself see the irony in anybody claiming that Puerto Rico and the United States are the same sovereign for purposes of self-government. So you agree they're not, correct? The United States and Puerto Rico, so the court's cases say the sovereignty of Puerto Rico comes from the United States, and the other important difference is— So, well, so do the territories that became states. Everybody gets their sovereignty from the United States, including tribes, because we have determined not to take it away. So just to be very clear, there is a fundamental difference between states that come into the territories here that I think is significant, both with respect— And Indians and everybody else. But the question is, we've announced a clear statement rule with respect to waiver, and you've not given me a reason why Puerto Rico should be treated differently than Indians, why it should be treated differently than territories, why somehow that clear statement rule shouldn't apply. Rosalie, by the way, was in the 19-teens sometime, decades before we started with the clear statement rule, but that's what we've got now. So Rosalie wasn't addressing a theory that—or a doctrine that wasn't in existence yet. A few points on that, just starting with the last one. Rosalie actually was at the exact same time that this court was articulating clear statement rules for federal waivers of immunity and state sovereignty. The Murray case that is cited in the briefing is an example of the clear statement rule for abrogating state sovereign immunity. The Schillinger case for the United States is an example for the federal government, and it's really telling that there are several cases in the territories that are about waivers or abrogation of immunity at that time that do not mention a clear statement rule. And I think the reason, one among many, is that the basis for the clear statement rules and for the immunity of states and tribes in the United States is fundamentally different. So let me just start with tribes, because that's been sort of the most bandied about analogy. Tribes differ in three ways. First of all, their sovereignty is akin to the sovereignty of a foreign nation, because that is what tribes were before the founding, and until 1871 the government, in fact, dealt with tribes through treaties. And they retained that status of having what the so-called law of nations immunity, immunity in other people's courts, by virtue of that. The reason for the clear statement rule from tribes sort of flows from that a bit, which is while Congress has plenary power over tribes, there is a strong understanding because the United States functions, at least as the Court has said, like a trustee over tribes, you assume that Congress is not trying to eliminate the autonomy of tribes. Those assumptions go obviously out the window with respect to territories. And the third thing about tribes is there is a longstanding history of related canons for tribes in which there is a discussion of various other canons for construing statutes that are ambiguous in the tribe's favor to preserve their sovereignty. Again, you can look through all of the territory cases, of which there are many, dating back to the 19th century. You will not find a clear statement rule for them. And both Rosalie and Emanuel, which has come up in the discussion, are good examples of considerations of waivers of immunity. Emanuel is sort of assuming that there could be immunity, but there is no discussion, even in parsing statutes in those cases, as to whether there needs to be a satisfied clear statement. I don't think there is any way you could say that the inquiry in Emanuel came close to satisfying a clear statement rule. You began in your opening statement, you said that a clear statement rule would interfere with Congress's powers. I don't understand quite how that is. It's a clear statement rule. It says they have to be clear. Maybe we should apply that rule across the board. But it doesn't prevent Congress from doing whatever it wants. It just has to make it clear. So why is all the fuss about whether that's a significant infringement on Congress's power? Well, there is, I think, a lot of fuss, which is a lot of statutes would otherwise be applicable to territories without the additional hoop of a clear statement rule. I mean, again, the clear statement rule is a departure of the ordinary understanding that you're simply parsing the text and looking for the best reading. And that is why the some constitutional basis or some at least historical pedigree to foist on a clear statement rule in the cases. But isn't that a constraint on the courts? It's not really about, you know, putting an impediment or restraining Congress in any way. I understood the clear statement rule to be about preventing us from finding something when it's not crystal clear that Congress intended it. I think it's both. So certainly for the state sovereign immunity cases, it is absolutely framed as a constraint on Congress. The idea is that because it is a very constitutionally sensitive ground, you shouldn't you should hold Congress to a higher standard before Congress sort of. Well, not holding them to a standard. I mean, I agree. You know, the chief justice makes a good point. This is Congress does what it wants. It does policy. It makes its determinations. And things like clear statement rules are about preventing the court from foisting its own view of what Congress has done by when a statute isn't crystal clear and when the implications are so severe, when we have a situation in which, you know, the implication of the court doing something that Congress didn't intend is stripping a territory of perhaps intended sovereign immunity. So I think the problem with that is the text of the statute itself is normally what stops courts from doing that. Adding on an additional layer of clear statement rule is doing something much more than that. It is requiring a degree of specificity and clarity that is unusual for statutes. And until this point, the court has demanded some sort of historical pedigree or some sort of reason for constitutional avoidance to impose that additional barrier. So whether you look at this as a need to make sure that courts aren't going into sensitive areas by accident or as a guardrail against Congress, I don't think it matters. The key thing here is that there is no constitutional imperative, unlike for states or the federal government, to guard sovereign immunity. And unlike the tribes, there is no historical pedigree or other basis for foisting on a clear statement rule. It would be very unusual. Go ahead. Justice Kagan. You know, I'm curious, and this is as much a question for Mr. Harris as it is for you, but I've lost my opportunity with him. What do you think Congress currently understands about Puerto Rico's immunity? Because usually clear statement rules operate against a backdrop of congressional understanding of what it needs to be clear about. And the clear statement rule have to be clear about abrogation. If Congress doesn't think Puerto Rico has immunity, why would it think that abrogation is even in the picture? So is there evidence about what Congress understands about sovereign immunity that would enable us to read this statute better? I think the best and perhaps only evidence is the text of the Federal Relations Act, which actually recurs. There's similar language for some other territories, which is that there was some need to say that the generally applicable federal laws have the same force and effect in the states as they do in Puerto Rico, which suggests that Congress may have thought that there was some reason to think that, for instance, there should be a reciprocity if states have immunity, give that same statutory benefit to Puerto Rico. Again, that would sort of seem to suggest Congress understands that Puerto Rico would not have that immunity of its own force. I mean, I think the other indication is Congress seems to understand that the Eleventh Amendment is, in fact, just for states, because Congress, when it is doing the super clear types of abrogation that the other side seems to embrace, says that states shall not be immune under the Eleventh Amendment. It's not talking about territories. Now, that does create some oddities, I think, under their view, because I'm not sure if you had a clear statement rule for territories, like how that language would then abrogate for territories, which will create some sort of oddities for federal statutes. But that's all we have. And I think the fact that Congress does not seem to be operating on a baseline of sovereign immunity is reflective of this Court's cases, which have never said that in federal courts, Puerto Rico, in fact, enjoys this immunity. They are, at best, very muddy, and muddied yet further by the fact that federal courts were directly reviewing decisions of Puerto Rico courts and other territorial courts on territorial claims, like well into the 20th century. Ms. Harris, why not just vacate and remand to the First Circuit, given the complexities of this question? You raised good points. The government's raised good points on this common law immunity question and the question of whether territories have it. Why not just vacate and let the First Circuit, you know, which has this long line of precedent, but it hasn't really fully engaged the question. Why not let them do it? Well, I think it would be unfair to give the other side a mulligan when the board's argument all along, I mean, we have argued, we've argued all along that Puerto Rico does not have Eleventh Amendment immunity. It is their affirmative burden to show that there is immunity, and they've written up this case all along on just the sole ground that the Eleventh Amendment and Pennhurst are the things they want to point at. And so it would be a little unfair to say we're just going to vacate, you know, First Circuit, do it over. And I think especially unnecessary, given that everyone appears to firmly agree that the Puerto Rico Constitution includes a waiver of immunity in this particular case for constitutional claims. So just all the more reason to say, look, I mean, if you're just saying, like, do it over, that might just counsel in favor of dismissing as improvidently granted instead of just getting rid of the First Circuit's opinion. On the posture and what's proper before us, if the First Circuit had said there is immunity and the statute does not abrogate the immunity, and you had been a petitioner in this court and come up with two questions here, the first being there's no sovereign immunity for Puerto Rico, and second question, even if sovereign immunity of the statute has a clear statement abrogating it. So you'd raise those two questions in the cert petition. Would it have been improper for us to just grant the second question and not grant the first question? I don't think so, because often as petitioners do and respondents in their alternative questions, do a belt and suspenders approach to try to clarify what's really at issue. But I don't think we have conceded, nor would you fairly say, that there is no embedded question of immunity within a clear statement rule. I mean, I think that's what this court's cases are essentially talking about. There's no talking about clear statement rules in this court's other immunity cases without talking about the reason for it, which is state sovereign immunity, the federal government's immunity from suit, tribes' immunity from suit. It is truly inextricably linked, because, again, the clear statement rule begs the question, why? Why are you distorting ordinary sort of – why are you putting a thumb on a scale that creating two layers of issues that will never get resolved? Because others are going to sue Puerto Rico on other claims besides the ones you're raising, and now that the First Circuit has said there's been a clear abrogation, that issue will control. At least if we note the differences here, address the question presented, and remand for consideration of the other issues, we can at least say that those are open questions and that they should be reviewed or looked at. But a dig is not going to get us there. It's only going to invite more lawsuits and different kinds of lawsuits, both of them controlled by precedent that nobody has said should be looked at. So just to be very clear, the lawsuits that would be – the universe of lawsuits really would be specific to PROMESA, and so the board would be – Well, that's not important, but I do think it does counter the argument that, you know, the Commonwealth of Puerto Rico isn't here, other people aren't here. I think this case indicated that people could participate, the board is claiming to be Puerto Rico, and in terms of – We don't invite amici. We say that if you choose, you can, but we don't tell them they have to. In fact, we discourage them. But respectfully, I think with respect to the question of PROMESA, yes, you could reserve all these questions and that would be fine. I mean, I think they're open questions no matter what. But you would still have to decide, I think, to get in a position of vacating the First Circuit's decision that there is some sort of abrogation here that is sufficiently clear. And so at a minimum, you're going to be addressing the question of how can a statute that refers to orders for constitutional violations that are clearly taking effect against the board, how can you have that if there is not abrogation for constitutional violations? And I don't think there's any way to say that that happens without some sort of abrogation happening in PROMESA, even under a clear statement rule. The other side has pointed to the Title III bankruptcy proceedings, and that is simply incorrect. That cannot be the answer to how there is abrogation for constitutional violations for two reasons. First of all, if Congress wanted to refer to Title III as the basis for these orders against constitutional violations, it presumably would have done what it did in Section 2126A, which is to actually refer expressly to the carve-out for Title III, which has its own very reticulated judicial review scheme of its own. And second of all, there is no abrogation for the type of claims that the board is pointing to here that would get you to an abrogation under Title III for orders remedying constitutional violations. Let me explain why. The Title III discussion incorporates by reference Section 106 of the Bankruptcy Code, which only abrogates sovereign immunity for 59 different types of bankruptcy proceedings. We looked at them. None of them include a cause of action for standalone separate proceedings of the type the board is pointing to for sort of standalone actions of the type against the board that would result in a remedy for constitutional violations. The board is pointing to cases in which it didn't actually raise immunity in the Title III context, and until now, the government seemed to have some discomfort with hanging the case on the ground. So just the PROMESA abrogation question, I think, is at a minimum very complicated, and if anything, tilts in our favor, given that there is language, even under a clear statement rule, that you cannot explain under the other side's view unless there is some abrogation for constitutional violations of the type here. Again, it would be even more curious to think that PROMESA, while giving the board lots of other powers in many other respects, sub salientio essentially overruled the Puerto Rico Constitution and its structural waiver of immunity for all of the other parts of Puerto Rico's government, and that that was not something that could be brought against the board. Justice Thomas? Justice Sotomayor? Justice Kavanaugh? No. Justice Barrett? Justice Jackson? Thank you, counsel. Mr. Harris, rebuttal? Yes, thank you. The only question on which this Court granted certiorari was whether Section 2126A abrogates, and there's a straightforward answer to that question, which is that it does not, because there is nothing even approaching a clear and unmistakable statement. Even if the would pass even under regular rules of statutory construction. There's no mention of abrogation, the word or the concept. There's no mention that the board wouldn't have immunity in this situation. There's just nothing. And as we said in our brief, the fact that it takes 15 pages to identify the arguments for why there's a clear statement tells you there isn't a clear statement. It would not help to dig this case for the simple reason that there's a First Circuit ruling on the 2126 abrogates all kinds of actions, every possible action against the board, both under federal law and under territorial law. That's an enormous decision. It's very counterintuitive to think Congress would have wanted that, that even situations where the board or a governmental entity in Puerto Rico may have had immunity on its own if it were part of the territory, now when it's a suit against the board in federal court, the board has a target on its back. Any type of action can be brought. That simply doesn't make sense. That ruling would still be there unless the court decides that that was incorrect because the interpretation of 2126A is not correct. I also have not heard from the other side really any defense of the actual reasons that the First Circuit gave here. First Circuit relied on certain exceptions that it read into or that were in section 2126A, other provisions. This court's precedents make it clear that's not a clear and anything close to that. I really have not heard either any kind of rebuttal to the general rule, which is that jurisdictional provisions do not abrogate for the reason I said up front, which is that jurisdiction is simply the ability for a court to hear a case. It doesn't say anything about the availability of defense. For all those reasons, we'd ask the court to reverse. Thank you. Thank you, counsel. The case is submitted.